IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

F I L E D

NOV 1 9 2014

CLERK, U.S. DISTRICT COURT
A. ALEXANDRIA, VIRGINIA

DELORME PUBLISHING COMPANY, )
INC., et al., )
 )
     Plaintiffs )
 )    1:13cv640 (LMB/TRJ)
    v. )
 )
BRIARTEK IP, INC. )
et al., )

    Defendants.

## MEMORANDUM OPINION

Before the Court is plaintiffs' Motion for Summary Judgment of Invalidity [Dkt. No.

109] ("Motion for Summary Judgment"). For the reasons that follow, the motion will be granted.

### I.    BACKGROUND

Plaintiffs DeLorme Publishing Company, Inc. and DeLorme Inreach, LLC (collectively

"DeLorme") brought this action against defendant BriarTek IP, Inc. ("BriarTek")[1] seeking a

declaratory judgment that they do not infringe any claims of United States Patent No. 7,991,380

("the '380 Patent") and that the claims of the '380 Patent are invalid and, therefore,

unenforceable. BriarTek has filed a counterclaim alleging that DeLorme infringes claims 1, 2, 5-

12, 17, 34, and 35 of the '380 Patent ("the asserted claims").

DeLorme and BriarTek, Inc.[2] compete in the market for satellite-based emergency

notification systems. These systems allow a person, such as a hiker or rock climber, encountering

a dangerous situation in an area not well-served by cellular communications to contact

emergency personnel. DeLorme markets a number of such products under the InReach

---

[1] DeLorme's Complaint named as defendants BriarTek IP, Inc. and BriarTek, Inc. See [Dkt. No. 1]. DeLorme later
voluntarily dismissed its claims against BriarTek, Inc. See [Dkt. Nos. 141, 142].

[2] BriarTek, Inc. and BriarTek IP, Inc. share common ownership. BriarTek Inc.'s Answer [Dkt. No. 24] ¶ 10.

trademark, and BriarTek's product is called the "Cerberus." See DeLorme's Counter-claim

Answer [Dkt. No. 39] ("DeLorme's Answer") ¶ 23. DeLorme's devices "are sold at a

substantially lower price than" BriarTek's. Id.

In 2011, BriarTek was awarded the '380 Patent for an invention titled "Global

Bidirectional Locator Beacon and Emergency Communications System." The invention is

described as "a simple text messaging device that uses commercial satellite infrastructure to send

and receive short text messages in the event of an emergency." '380 Patent col. 3 lines 58-62.

Figure 1 of the '380 Patent illustrates a preferred embodiment of the invention:



Figure 1 shows a user unit [2] in communication with a monitoring system [3] through a satellite

network [10]. '380 patent col. 4 lines 25-43.

On August 17, 2012 BriarTek filed ITC investigation No. 337-TA-854, alleging that DeLorme's InReach™ devices infringed the '380 Patent. DeLorme's Answer ¶ 24. Over BriarTek's objection, the ITC terminated the investigation after DeLorme consented on March 7, 2013 to an order in which it agreed not to sell or offer for sale within the United States after importation any devices that infringe claims 1, 2, 5, 10-12, or 34 of the '380 Patent. Id. The consent order terminated the investigation before the Administrative Law Judge ("ALJ") made a determination regarding the validity of the '380 Patent. On June 9, 2014 the ITC found that DeLorme violated the consent order and imposed a civil penalty of $6,242,500. Notice of International Trade Commission's Issuance Of Civil Penalty [Dkt. No. 163] at 2.

DeLorme filed the instant declaratory judgment complaint on May 28, 2013. After BriarTek's Motion to Dismiss was denied, it filed an answer and counter-claim. DeLorme has moved for summary judgment, to which BriarTek has responded, and DeLorme has filed a reply. [Dkt. Nos. 110, 139, and 140].

A. **Prosecution History of the '380 Patent**

The '380 Patent issued from United States Patent Application No. 11/693,434 (the "'434 Application"), which was filed on March 7, 2007 and claimed priority to Provisional Application No. 60/788,411 ("the Provisional Application"), filed on March 30, 2006.[3] DeLorme's Brief in Support of Its Motion for Summary Judgment of Invalidity [Dkt. No. 110] ("DeLorme Br.") at David Swetnam-Burland Declaration ("DSB Dec.") Ex. 1. Claim 1 of the '434 application originally recited

---

[3] DeLorme's expert contests whether the Provisional Application provides sufficient written description to support the '434 Application's claim to priority under 35 U.S.C. 112. See Opening Expert Report of William Zancho on Invalidity [Dkt. No. 154] Ex. 9 at 67 ("Zancho Opening Report"). DeLorme does not raise that issue in its Motion. See DeLorme Br. Because DeLorme does not assert any reference from between March 30, 2006 and March 7, 2007 (the date range implicated by the Provisional Application), the issue does not affect the outcome of this case and the Court will treat the effective filing date of the '434 Application as March 30, 2006.

[a]n emergency monitoring and reporting system, comprising:
> a user unit; and
> a monitoring system;
> wherein the user unit includes an input device, a user satellite communication system, and a user processor communicatively coupled to the input device and the user satellite communication system;
> wherein the monitoring system includes a monitoring satellite communication system, an output device, and a monitoring processor communicatively coupled to the monitoring satellite communication system and the output device;
> and wherein the user satellite communication system and the monitoring satellite communication system are adapted for mutual communication via a satellite network such that the output device can present information to an observer, wherein the information corresponds to information entered at the input device.

Id.

The United States Patent and Trademark Office ("USPTO") rejected all proposed claims of the '434 application as anticipated by United States Patent Application Publication No. 2006/0007038 ("Boling"). DSB Dec. Exs. 2, 3. The applicants then proposed claim amendments which they argued distinguished their invention from Boling. Specifically, they added the limitation "wherein the input device includes a text entry device adapted to receive textual data entered by a user" to the original language of claim 1. Id. Ex. 4.

The USPTO rejected the amended claims as obvious over Boling in light of United States Patent No. 5,914,675 ("Tognazzini"). Id. Exs. 5, 6. The applicants argued in response that the amended claims were not obvious because

> the claimed invention is an improvement on the Boling et al. system in that it provides capabilities beyond those suggested or contemplated by Boling et al., even considering the availability of text-messaging hardware such as that disclosed by Tognazzini. That is, the Boling et al. system is not reasonably capable of being modified to allow for detailed text messaging, and therefore any teaching related to the transmission of text messaging cannot be applied to the Boling et al. system, and any such attempt would be unworkable absent substantial re-design on the order of patentable effort.

DSB Dec. Ex. 7. The USPTO later issued the '380 Patent. Id. Ex. 8.

## B. The '380 Patent

BriarTek alleges that DeLorme infringes claims 1, 2, 5-12, 17, 34, and 35 of the '380

Patent. Although the "Background of the Invention" describes allowing a traveler to contact

rescue authorities when "outside of the range of traditional telephones, cellular phones, or

radios," '380 Patent col. 1 lines 22-23, the claims are not so limited. All of the asserted claims (1,

2, 5-12, 17, 34, and 35) depend from or incorporate Claim 1, which recites

> [a]n emergency monitoring and reporting system, comprising:
> a user unit; and
> a monitoring system;
> wherein the user unit includes an input device, a user satellite communication system, and a user processor communicatively coupled to the input device and the user satellite communication system;
> wherein the monitoring system includes a monitoring satellite communication system, an output device, and a monitoring processor communicatively coupled to the monitoring satellite communication system and the output device;
> wherein the user satellite communication system and the monitoring satellite communication system are adapted for mutual communication via a satellite network such that the output device can present information to an observer, wherein the information corresponds to information entered at the input device;
> and wherein the input device includes a text entry device adapted to receive textual data entered by a user.

'380 Patent col. 8 lines 2-23.

In essence, claim 1 discloses a system consisting of two components, a user unit (Figure

1 [2]) and a monitoring system (Figure 1 [3]), that send text messages to each other via a satellite

network (Figure 1 [10]). Id. There is no limitation on the size, shape, or form of the user unit or

the monitoring system in the claim language or the patent specification. DSB Dec. Ex. 10

(Deposition of Paul Gregory Steffes) ("Steffes Dep.") at 30, 36, 44.

As shown in the following chart, each of the asserted dependent claims adds various

elements to the system disclosed in claim 1:

| Claim 2 | "The system of claim 1, wherein the user unit is adapted to be coupled to a user." |
|---|---|
| Claim 5 | "The system of claim 1, wherein the user unit further includes a memory device in communication with the user processor, and the input device includes an actuator that when selected accesses message data stored in the memory device." |
| Claim 6 | "The system of claim 5, wherein selection of the actuator causes the accessed message data to be transmitted by the user satellite communication system to the monitor satellite communication system via the satellite network." |
| Claim 7 | "The system of claim 6, wherein the message data includes a plurality of instances of message data, wherein each data instance of said plurality of data instances is stored in a respective selectable portion of the memory device." |
| Claim 8 | "The system of claim 7, wherein the input device includes a selection device that is adapted to select one message data instance from among the plurality of data instances, wherein the selected one message data instance is transmitted by the user satellite communication system on selection of the actuation device." |
| Claim 9 | "The system of claim 8, wherein the selection device is a scrolling device." |
| Claim 10 | "The system of claim 1, wherein the user satellite communication system includes a transmitter, and wherein the input device is adapted to receive user data from a user and the user processor is adapted to format the data for transmission by the transmitter." |
| Claim 11 | "The system of claim 10, wherein the monitor satellite communication system includes a receiver that is adapted to receive transmissions from the transmitter via the satellite network, and wherein the monitor |

| | processor is adapted to format the user data received by the receiver for presentation to the observer on the output device." |
|---|---|
| Claim 12 | "The system of claim 11, wherein the output device is adapted to display textual messages." |
| Claim 17 | "The system of claim 1, wherein the user unit further includes a status sensor that is communicatively coupled to the user processor and that provides a status output, wherein the user processor is adapted to format the status output for communication from the user unit to the monitoring system via the satellite network." |
| Claim 34 | "The system of claim 1, wherein the satellite network provide [sic] substantially global coverage." |
| Claim 35 | "A method of providing a travel service, comprising providing the user unit of claim 1 to a user; and monitoring the monitoring system of claim 1." |

## II.   DISCUSSION

DeLorme moves for summary judgment, arguing that the claims at issue in the '380

Patent are invalid as anticipated by three prior art references. In the alternative, DeLorme argues

that the asserted claims are obvious in light of those same references. DeLorme also argues that

the '380 Patent is invalid because it contains inadequate written description of the invention, is

directed to unpatentable subject matter, and contains claims which are indefinite. BriarTek

responds that the claims are not invalid, and that two of the references that DeLorme cites are not

prior art because DeLorme has not presented sufficient proof of public availability before the

critical date.

### A.  **Standard of Review**

Summary judgment is appropriate where the record demonstrates "that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

7

of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

The Court must view the record in the light most favorable to the nonmoving party, see Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132 (4th Cir. 2002); however, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." Anderson, 477 U.S. at 252; see also Othentec Ltd. v. Phelan, 526 F.3d 135, 140 (4th Cir. 2008); TecSec, Inc. v. Int'l Bus. Machines Corp., 763 F. Supp. 2d 800, 804-05 (E.D. Va. 2011) aff'd, 466 F. App'x 882 (Fed. Cir. 2012). When relying on expert testimony, "[a] party does not manufacture more than a merely colorable dispute by submitting an expert declaration that something is black when the moving party's expert says it is white; there must be some foundation or basis for the opinion." Invitrogen Corp. v. Clontech Labs., 429 F.3d 1052, 1080 (Fed. Cir. 2005). Unsupported statements that a reference does not teach a limitation, even from an expert, are insufficient to avoid summary judgment. See Krippelz v. Ford Motor Co., 667 F.3d 1261, 1269 (Fed. Cir. 2012).

## B. Availability of Prior Art

Before determining whether a reference invalidates a claim, the Court must first determine whether the reference is available as prior art under 35 U.S.C. 102.[4] DeLorme's motion for summary judgment relies on three references, none of which were before the USPTO when it examined the '434 application. The first is United States Patent Application Publication

---

[4] The America Invents Act ("AIA") extensively amended 35 U.S.C. 102. Pub. L. No. 112-29, §3, 125 Stat. 284, 285-93 (2011). As the '380 Patent was filed before the AIA's implementation date, pre-AIA § 102 must be applied. See Solvay S.A. v. Honeywell Int'l. Inc., 742 F.3d 998, 1000 n.1 (Fed. Cir. 2014). All references to 35 U.S.C. §§ 101, 102, 103, and 112 refer to the pre-AIA versions of those statutes.

8

No. 2004/0111195 ("de Vries"). DSB Dec. Ex. 14. The second is a user guide for Motorola's Iridium Satellite Series 9505 portable handset (the "Motorola Manual"). DSB Dec. Ex. 17. The third is an Institute of Electrical and Electronics Engineers ("IEEE") article titled "ORBCOMM PCS Available Now!" ("ORBCOMM"). DSB Dec. Exs. 11, 12.

BriarTek has not contested de Vries' availability as prior art, see BriarTek IP, Inc. and BriarTek, Inc.'s Opposition [Dkt. No. 139] ("BriarTek Opp'n"), given that it was published on June 10, 2004; however, BriarTek contends that DeLorme has presented insufficient evidence that ORBCOMM and the Motorola Manual were published before the effective filing date of the '380 Patent, and previously moved to strike those references as prior art. See id. at 18-19 (ORBCOMM), 25-26 (Motorola Manual). BriarTek's Motion to Strike those references was argued in open court and denied from the bench. Order Denying Motion to Strike [Dkt. No. 138]. To ensure the clarity of the record, BriarTek's arguments are addressed here.

"Whether a reference was published prior to the critical date, and is therefore prior art, is a question of law based on underlying factual questions." TypeRight Keyboard Corp. v. Microsoft Corp., 374 F.3d 1151, 1157 (Fed. Cir. 2004). "Public accessibility is the touchstone in determining whether a reference constitutes a printed publication." ResQNet.com, Inc. v. Lansa, Inc., 594 F.3d 860, 866 (Fed. Cir. 2010) (internal quotation marks omitted).

1. Motorola Manual

BriarTek has not raised a material factual dispute regarding whether the Motorola Manual was available to the public; instead, it merely makes the assertion that "there is no evidence presented that the document was publicly available." BriarTek Opp'n at 25. That argument fails for several reasons. First, the manual itself bears a copyright date of 1999. Motorola Manual at 115. Moreover, DeLorme deposed Eva Valentine, the person who created the Motorola Manual.

9

DSB Dec. Ex. 15 at 5-6. Ms. Valentine testified that the Motorola Manual was distributed "with the actual, physical product." Id. at 9. Members of the public could also receive a copy via CD-ROM, downloading over the Internet, or by calling Motorola. Id. at 10-14.[5] Ms. Valentine confirmed that the phone (and therefore the manual) was available to the public at some point during 2000. Id. at 8.[6]

BriarTek does not present any evidence to rebut Ms. Valentine's statements, instead simply asserting that "[t]here is no evidence presented that the document was publicly available." BriarTek Opp'n at 25. Such lawyer argument does not create a factual dispute. In light of the copyright date on the Motorola Manual and the uncontroverted testimony of Ms. Valentine, there is no genuine dispute of material fact regarding the public availability of the Motorola Manual. Therefore, as a matter of law, the Motorola Manual is a qualifying printed publication under 35 U.S.C. 102.

### 2. ORBCOMM

BriarTek has also failed to raise a material factual dispute regarding whether ORBCOMM was available to the public, again merely arguing that "[t]here is no evidence that [ORBCOMM] was publicly available." BriarTek Opp'n at 18. That argument was contradicted by BriarTek's own expert, who stated that he believed that ORBCOMM was published in 1995.

---

[5] "Q. Would the user guide have been in paper form when distributed with the phone?
A. Yes, but we also had an electronic copy available, I believe, through the website.
Q. So if a customer wanted to get a copy of the user guide from Motorola, they could go online to get it? . . .
A. Yes. And I believe we also created CD ROMs of the user guide.
. . .
Q. Could somebody also call up Motorola and ask for a copy of the user guide? . . .
A. Yes."

[6] "Q. Do you know when the user guide for the 9505 would have become available?
A. I'm assuming if my dates are correct, 2000."

Steffes Dep. at 10. Further, ORBCOMM's corporate representative, Donald Brickerd, Jr., stated in his deposition that ORBCOMM was published in 1995. DSB Dec. Ex. 12 at 9.[7]

By failing to come forward with any evidence, in the form of declarations, depositions, or documentation, indicating that ORBCOMM was not publicly available, BriarTek has failed to rebut the evidence of prior publication. Therefore, as a matter of law, ORBCOMM is also a qualifying printed publication under 35 U.S.C. 102.

Because de Vries, the Motorola Manual, and ORBCOMM were all available as printed publications more than one year before Oct. 4, 2006 (the effective filing date of the '380 Patent), as a matter of law each of the three references qualifies as prior art under 35 U.S.C. § 102(b).

## C. <u>Claim Construction</u>

"The first step in any invalidity analysis is claim construction." <u>Akamai Techs., Inc. v. Cable & Wireless Internet Servs., Inc.</u>, 344 F.3d 1186, 1192 (Fed. Cir. 2003). "[C]laim construction is the province of the court, not a jury." <u>Ballard Med. Prods. v. Allegiance Healthcare Corp.</u>, 268 F.3d 1352, 1358 (Fed. Cir. 2001). Although "some courts have found it useful to hold hearings and issue orders comprehensively construing the claims in issue . . . [s]uch a procedure is not always necessary," <u>id.</u>, as "the district court has considerable latitude in determining when to resolve issues of claim construction." <u>CytoLogix Corp. v. Ventana Med. Sys.</u>, 424 F.3d 1168, 1172 (Fed. Cir. 2005). Accordingly, a district court may adopt the non-moving party's claim construction for the purposes of evaluating a motion for summary judgment. <u>See</u> <u>Teknowledge Corp. v. Cellco P'ship</u>, 626 F. Supp. 2d 1027, 1033 (N.D. Cal. 2009), <u>aff'd</u>, 374 F. App'x 972, 973 (Fed. Cir. May 6, 2010) (<u>per curiam</u>). If a reference anticipates even under the patentee's definition of the claim language, then summary judgment is

---

[7] "A. The Todd Hara article came out in 1995."

appropriate. Id. It is significant that BriarTek has not alleged that construing the claims affects whether any claim is invalid. For example, BriarTek has not argued that a piece of prior art invalidates a claim under DeLorme's construction, but does not invalidate under BriarTek's construction. See BriarTek Opp'n.

Both BriarTek and DeLorme have filed proposed claim constructions. DeLorme's Claim Construction Brief [Dkt. No. 156]; BriarTek IP, Inc.'s Submission on Claim Construction [Dkt. No. 155] ("BriarTek's Claim Construction Brief"). BriarTek and DeLorme also agreed to the constructions of a number of terms in their litigation before the ITC. See BriarTek's Claim Construction Brief Att. 3 ("Agreed Constructions"). DeLorme maintains that claim construction is not necessary. Delorme's Claim Construction Brief at 1-2.

Solely for the purposes of evaluating the summary judgment motion, this Court will adopt the constructions that the parties agreed to before the ITC. To ensure the clarity of the record, those constructions are set forth below.

| Claim Number | Claim Term | Agreed Construction |
|---|---|---|
| Claim 1 | "a user processor communicatively coupled" | "an apparatus on or in the user device that processes data or information, and transmits the data or information between the input device and the user satellite communication system." |
| | "monitoring processor communicatively coupled" | "an apparatus on or in the monitoring system that processes data or information between the output device and the monitoring satellite system." |

| | | |
|---|---|---|
| | "adapted for mutual communication via a satellite network" | "configured for two-way communication via the satellite communications network." |
| | "adapted to receive textual data entered by a user" | "configured for entry of text messages by the user." |
| Claim 2 | "adapted to be coupled to a user" | "configured for physically coupling or tethering to a user." |
| Claim 5 | "memory device in communication with the user processor" | "memory chipset or circuitry that is accessed by an apparatus on or in the user device that processes data or information." |
| | "an actuator that when selected accesses message data stored in the memory device" | "a key or button that accesses message data stored on the memory chipset or circuitry." |
| Claim 10 | "adapted to format the data for transmission" | "configured for processing the data for transmission." |

The parties dispute the meanings of a number of claim terms. <u>See</u> DeLorme's Claim

Construction Brief at 11-22 (listing both proposed constructions). For the purposes of evaluating

this motion, BriarTek's proposed constructions are adopted. Those constructions are set forth

below.

| Claim Number | Claim Term | BriarTek's Construction |
|---|---|---|
| Claim 1 | "An emergency monitoring and reporting system."[8] | "a system for observing and checking the progress as well as providing an account of individuals operating in serious or unexpected conditions." |

---

[8] This language only appears in the preamble of claim 1. A preamble only limits the claim if it recites essential structure or gives meaning to the claim. <u>Eaton Corp. v. Rockwell Int'l Corp.</u>, 323 F.3d 1332, 1339 (Fed. Cir. 2003). "Preamble language that merely states the purpose or intended use of an invention is generally not treated as limiting the scope of the claim." <u>Bicon, Inc. v. Straumann Co.</u>, 441 F.3d 945, 952 (Fed. Cir. 2006) (internal quotation marks omitted). Further, "[f]or apparatus claims . . . generally patentability depends on the claimed structure, not on the use or purpose of that structure." <u>Marrin v. Griffin</u>, 599 F.3d 1290, 1294 (Fed. Cir. 2010). Accordingly, the Federal Circuit has found that the preamble language "for permitting a user to write thereon without the use of a marking implement" recited an intended use, and so did not limit the claim. <u>Id.</u>

The preamble of claim 1 appears to be an intended use of the claimed system, rather than reciting essential structure or giving the claim meaning. DeLorme argues that preambles are generally not limiting, but nonetheless proposes a definition for the term. DeLorme's Claim Construction Brief at 12-13.

|  |  |  |
|---|---|---|
|  | "user unit" | "a device or equipment used by a user." |
|  | "monitoring system" | "a communications system to check on the progress of a user and to receive information from the user." |
|  | "input device" | "a thing adapted for receipt of data." |
|  | "text entry device" | "keypad or virtual keyboard capable of entering detailed te[x]t messages." |
|  | "user satellite communication system" | "the transmitter, receiver, and antenna necessary for mutual communication via a satellite network."[9] |
|  | "monitoring satellite communication system" | "the transmitter, receiver, and antenna necessary for mutual communication via a satellite network." |
|  | "output device" | "a device or equipment that is capable of displaying data and information." |
|  | "output device can present information to an observer that corresponds to information entered at the input device" | "the output device displays textual messages and/or audio messages, corresponding to the format of the message sent by the user unit, and the information displayed matches or agrees almost exactly with the information input." |
| Claim 5 | "actuator" | "a switch, button, or virtual button." |
| Claim 8 | "selection device" | "a mechanism that accesses a plurality of data, including a scrolling device." |
| Claim 12 | "wherein the output device is adapted to display textual messages" | "the output device displays the text messages that matches or agrees almost exactly with the information input by the user." |
| Claim 17 | "status sensor" | "a device or process that determines the presence or absence of a parameter." |

[9] BriarTek's definition indicates that a transmitter, receiver and antenna are "necessary" for mutual communication via a satellite network. Accordingly, a transmitter, receiver, and antenna are inherently present in any reference that teaches mutual communication via a satellite network.

## D. Level of Ordinary Skill in the Art

Numerous aspects of evaluating patentability including interpretation of the written description, Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996), anticipation, Advanced Display Sys. v. Kent State Univ., 212 F.3d 1272, 1282 (Fed. Cir. 2000), obviousness, KSR Int'l Co. v. Teleflex, Inc., 550 U.S. 398, 405 (2006), written description, Ariad Pharm., Inc. v. Eli Lilly & Co., 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc), and claim construction. Phillips v. AWH Corp, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc), require reference to a person with ordinary skill in the art at the time of invention. BriarTek argues that a person with the appropriate level of ordinary skill in the art would have a bachelor's degree in physics or engineering with approximately ten years of experience in the field of satellite communications, satellite navigations, or wireless interfaces, or a master's degree in physics or engineering and five years of relevant experience, or a Ph.D. and research in the same field. Opening Expert Report of Paul G. Steffes [Dkt. No. 154] Ex. 10 ("Steffes Opening Report") at 20-21. DeLorme argues that a person with the appropriate level of ordinary skill in the art would have a bachelor's degree in electrical or computer engineering and three to five years of practical experience in designing and implementing wireless subscriber equipment devices or systems for commercial applications. DeLorme Br. at 8.

Although BriarTek emphasizes the "[n]eed for [e]vidence on [o]ne of [o]rdinary [s]kill in the [a]rt," BriarTek's Claim Construction Brief at 3, BriarTek does not identify any issue in the instant motion where resolving the level of ordinary skill in the art makes a difference. See BriarTek Opp'n. For example, nowhere does BriarTek argue that the claims would be obvious to a person of the experience described by DeLorme, but would not be obvious to a person of the experience described by BriarTek. Indeed, it would seem that BriarTek's proposed person of

ordinary skill is more likely to find the patent invalid because BriarTek's person of ordinary skill has more education and experience than DeLorme's. For the purposes of resolving DeLorme's summary judgment motion, the Court adopts BriarTek's definition of a person of ordinary skill in the art.

### E. Anticipation

Because patents are entitled to a presumption of validity by virtue of their approval by the USPTO, a challenger must prove invalidity by clear and convincing evidence. Microsoft Corp. v. i4i Ltd. P'ship, 131 S.Ct. 2238, 2242 (2011). A patent will be declared invalid due to anticipation only if "each and every limitation" of the patent is found "either expressly or inherently in a single prior art reference." IPXL Holdings, L.L.C. v. Amazon.com, Inc., 430 F.3d 1377, 1381 (Fed. Cir. 2005) (citation omitted). "[A]nticipation by inherent disclosure is appropriate only when the reference discloses prior art that must necessarily include the unstated limitation." Transclean Corp. v. Bridgewood Servs., Inc., 290 F.3d 1364, 1373 (Fed. Cir. 2002) (emphasis removed).

"Anticipation is a question of fact." Glaverbel Societe Anonyme v. Northlake Mkting. & Supply, Inc., 45 F.3d 1550, 1554 (Fed. Cir. 1995). Even so, anticipation "may be decided on summary judgment if the record reveals no genuine dispute of material fact." Golden Bridge Tech., Inc. v. Nokia, Inc., 527 F.3d 1318, 1321 (Fed. Cir. 2008). General statements that a reference lacks a claimed limitation do not create a material dispute. See Krippelz, 667 F.3d at 1269. "[T]here must be some foundation or basis for the opinion" that a reference does not teach a claim limitation. Invitrogen Corp., 429 F.3d at 1080. Further, a patentee cannot prevent summary judgment by arguing that a reference lacks unclaimed features. King Pharms., Inc. v. Eon Labs., Inc., 616 F.3d 1267, 1275 (Fed. Cir. 2010).

1. De Vries

Patent Application Publication No. 2004/0111195 to Jeroen Joost de Vries et al., titled "Systems and Methods for Marine Satellite Monitoring," describes a "service for tracking information relating to the location and condition of boats, as well as other information useful to boaters." De Vries ¶ [0002]. "In one embodiment, the invention includes a marine telematics system comprising a satcom unit on a boat . . . for sending and receiving signals to a land-based center of operations." Id. ¶ [0009]. "The signals may . . . include speech or text signals from the boater to the land-based center of operations or speech or text signals from the land-based center of operations to the boater." Id. The speech and text communications may be sent between the user unit on the boat and the land-based center of operations via satellite. Id. ¶ [0036]. As a matter of law and as shown in the following tables, de Vries anticipates claims 1, 5-12, 17, 34, and 35 of the '380 Patent.

i. Claim 1

| '380 Patent Claim 1 | De Vries |
|---|---|
| "An emergency monitoring and reporting system" | "The marine telematics system of the invention may include components that ensure a boater's safety by providing support in the case of emergencies and guidance in case the boater becomes lost," and allows for "contacting a local emergency response authority, such as harbor police or the Coast Guard." De Vries ¶¶ [0008], [0010]. The system allows for detection of events and "handling of situations which may arise while the boat is in use or at dock." See also Zancho Opening Report ¶ 133. |
| "comprising: a user unit" | "Marine SatCom Unit 506 (MSU)" in de Vries Figures 5A and 5B, and related description in ¶¶ [0044] - [0046]. The unit "may provide a means for sending and receiving communications via communications satellites. The communications can be text, data, spoken, or any other form of communication." Id. See also Zancho Opening Report ¶ 135. |

| "comprising . . . a monitoring system" | The system includes a "land-based center of operations . . . that is manned by a land-based systems operator who monitors incoming signals and messages" and exchanges "speech and text signals" with the boater. Id. ¶ [0009]. "Once the message has been received, the land-based system operator can send a receipt signal." Id. ¶ [0033]. The land-based center of operations "receiv[es] signals . . . from a boat equipped with a satcom unit . . . send[s] signals from the land-based center of operations to the boat indicating that the signals have been received, and update[es] a database containing information about the position of the boat." Id. ¶ [0010]. The signals "may include instructions for responding to events on the boat that are detected by one or more sensors on the boat." Id. See also Zancho Opening Report ¶ 138. |
|---|---|
| "wherein the user unit includes an input device" | The user unit includes a keypad including "buttons 176 for scrolling through text appearing in the text window 174 and buttons 178 for scrolling through menu options." There may also be "a button 180 for selecting a function," de Vries ¶¶ [0035] – [0037], and "[t]he boater may select one of a preset number of canned text messages to send using the scroll 176, menu 178, and select 180 buttons." id.; See also Zancho Opening Report ¶ 136. |
| "wherein the user unit includes . . . a user satellite communication system" | "[A]ll communications between the boat and the land-based Center are via the Marine SatCom Unit (MSU), communicating with satellites." De Vries ¶ [0044]. See also Zancho Opening Report ¶ 137. |
| "wherein the user unit includes . . . a user processor communicatively coupled to the user device and the user satellite communication system" | "The invention may further include a computer connected to a communications network . . . In one embodiment, information from the computer is received over the communications network," de Vries ¶ [0009], and "the operator module could be a computer such as a laptop computer, or a handheld device, such as a PDA." Id. ¶ [0039]. Further, "a processor is necessary for the Operator's Module to execute t[he] functions of the operators module" – i.e., the processor is inherent. Zancho Opening Report ¶ 137. |

| | |
|---|---|
| "wherein the monitoring system includes a monitoring satellite communication system" | "[T]he land-based operations center [can] send text messages to the boater via satellite data transmission." De Vries ¶ [0036]. <u>See also</u> Zancho Opening Report ¶ 138. |
| "wherein the monitoring system includes . . . an output device" | "[T]he land-based operations center [can] send text messages to the boater via satellite data transmission," de Vries ¶ [0036], and the boater can "communicate with the land-based operations center or with friends or family via text messages." <u>Id.</u> ¶ [0037]. Communicating via text messages requires being able to see those messages. <u>See also</u> Zancho Opening Report ¶ 139. |
| "wherein the monitoring system includes . . . a monitoring processor communicatively coupled to the monitoring satellite communication system and the output device" | "[T]he land-based operations center [can] send text messages to the boater via satellite data transmission." De Vries ¶ [0036]. <u>See also</u> Zancho Opening Report ¶ 138. |
| "wherein the user satellite communication system and the monitoring satellite communication system are adapted for mutual communication via a satellite network" | "[T]he land-based operations center [can] send text messages to the boater via satellite data transmission." De Vries ¶¶ [0033], [0034], [0036]. <u>See also</u> Zancho Opening Report ¶ 138. |
| "such that the output device can present information to an observer, wherein the information corresponds to information entered at the input device" | The boater can "communicate with the land-based operations center or with friends or family via text messages." De Vries ¶¶ [0033]-[0034] and [0037]. <u>See also</u> Zancho Opening Report ¶¶ 138-40. |
| "and wherein the input device includes a text entry device adapted to receive textual data entered by a user." | "[T]he operator unit may further comprise a keypad . . . that allows composition of text messages while the boater is underway, which may then be sent in the same manner as any canned messages." De Vries ¶ [0037]. <u>See also</u> Zancho Opening Report ¶ 140. |

BriarTek does not dispute that de Vries teaches the vast majority of claim 1. <u>See</u> BriarTek Opp'n at 23. BriarTek only argues that de Vries does not anticipate claim 1 because de Vries "disclos[es] a system in which canned messages can be changed in the field and sent as a standard canned message. This is a different process from engaging in mutual communication using detailed text messages." <u>Id.</u> at 23. The argument appears directed to the requirement in

claim 1 of the '380 Patent that "the user satellite communication system and the monitoring satellite communication system are adapted for mutual communication via a satellite network."

BriarTek's argument is unconvincing for several reasons. Neither BriarTek nor Dr. Steffes, their expert, explain why the communication process employed by de Vries differs from the claimed process. BriarTek Opp'n at 23; Rebuttal Expert Report of Paul G. Steffes On Behalf Of BriarTek Inc. And BriarTek IP. Inc. [Dkt. No. 154] Ex. 11 ("Steffes Rebuttal Report") at 8. As such, the argument amounts to a conclusory statement of validity, which cannot prevent summary judgment. Krippelz, 667 F.3d at 1269.

Even if BriarTek were correct in arguing that the system of de Vries is different from "mutual communication using detailed text messages," "using detailed messages" is not an element in claim 1 of the '380 Patent. The word "detailed" does not appear in any claim in the '380 Patent, and BriarTek does not dispute that de Vries teaches mutual communication. Moreover, the written description of the '380 Patent focuses the invention on "send[ing] and receiv[ing] short text messages." '380 Patent col. 3 lines 58-62 (emphasis added). Thus, BriarTek directs its sole argument that de Vries does not anticipate claim 1 to a feature not present in the claim. Presenting argument regarding unclaimed features cannot prevent summary judgment. King Pharms., 616 F.3d at 1275.

Accordingly, BriarTek does not raise a material dispute regarding the validity of claim 1. As de Vries teaches, expressly or inherently, each and every feature of claim 1, the claim is invalid as anticipated by de Vries.

20

## ii. Claims 5-9[10]

| '380 Patent Claim 5 | De Vries |
|---|---|
| "The system of claim 1, wherein the user unit further includes a memory device in communication with the user processor" | "The boater may select one of a preset number of canned messages to send . . . These canned text messages may be preset by the boater before the voyage." De Vries ¶ [0037]. For the messages to be pre-set, they must be stored, which necessarily means that a memory device is needed. Zancho Opening Report ¶ 142. |
| "and the input device includes an actuator that when selected accesses message data stored in the memory device."[11] | "The boater may select one of a preset number of canned text messages to send using the scroll 176, menu 178, and select 180 buttons." De Vries ¶ [0037]. See also Zancho Opening Report ¶ 142. |

| '380 Patent Claim 6 | De Vries |
|---|---|
| "The system of claim 5, wherein selection of the actuator causes the accessed message data to be transmitted by the user satellite communication system to the monitor communication system via the satellite network." | "When the emergency button 110 is pressed, a visual signal 120 . . . may be provided . . . to indicate that . . . the emergency transmission is being sent." De Vries ¶ [0028]. "Pressing the emergency button 110 may automatically activate an automated position report function. The automated position report function may then send a report of the boat's position to the land-based system operator." Id. ¶ [0029]. Further, "[t]he boater may select one of a preset number of canned text messages to send using the scroll 176, menu 178, and select 180 buttons." Id. ¶ [0037]. See also Zancho Opening Report ¶ 143. |

| '380 Patent Claim 7 | De Vries |
|---|---|
| "The system of claim 6, wherein the message data includes a plurality of instances of message data, wherein each data instance of said plurality of data instances is stored in a respective selectable portion of the memory device." | "The boater may select one of a preset number of canned text messages to send using the scroll 176, menu 178, and select 180 buttons." De Vries ¶ [0037]. See also Zancho Opening Report ¶ 144. |

---

[10] BriarTek groups claims 5-9 together in opposing the Motion for Summary Judgment. BriarTek Opp'n at 23-24. Accordingly, those claims will be addressed together.

[11] The term "actuator" has been construed to mean "a key or button that accesses message data stored on the memory chipset or circuitry."

| '380 Patent Claim 8 | De Vries |
| --- | --- |
| "The system of claim 7, wherein the input device includes a selection device that is adapted to select one message data instance from among the plurality of data instances, wherein the selected one message data instance is transmitted by the user satellite communication system on selection of the actuation device." | "The boater may select one of a preset number of canned text messages to send using the scroll 176, menu 178, and select 180 buttons." De Vries ¶ [0037]. See also Zancho Opening Report ¶ 145. |

| '380 Patent Claim 9 | De Vries |
| --- | --- |
| "The system of claim 8, wherein the selection device is a scrolling device." | "The operator module may include buttons 176 for scrolling through text appearing in the text window 174 and buttons 178 for scrolling through menu options," de Vries ¶ [0035], and "the boater may select one of a preset number of canned text messages to send using the scroll 176, menu 178, and select 180 buttons." Id. ¶ [0037]. See also Zancho Opening Report ¶ 146. |

Taken together, claims 5-9 describe sending and receiving preset messages. BriarTek does not dispute that de Vries teaches the majority of the limitations of claims 5-9. See BriarTek Opp'n at 24. BriarTek only argues that de Vries is limited to teaching canned messages or detailed messages, but cannot teach both. Id. at 24; BriarTek Opp'n Att. 2 ("Steffes Dec.") ¶ 67. BriarTek does not explain why a device could not send both types of messages. Contrary to BriarTek's argument, de Vries specifically states that "[t]he boater may select one of a preset number of canned text messages to send using the scroll 176, menu 178, and select 180 buttons . . . the operator unit may further comprise a keypad . . . that allows composition of text messages while the boater is underway." De Vries ¶ [0037] (emphasis added). Thus, de Vries specifically teaches that a boater can either (1) select a preset message to send or (2) compose customized

22

text messages while underway. BriarTek cannot create a material dispute by simply "submitting an expert declaration that something is black when the moving party's expert says it is white; there must be some foundation or basis for the opinion." Invitrogen Corp., 429 F.3d at 1080. Because de Vries unambiguously teaches sending both types of messages, BriarTek's arguments to the contrary amount to conclusory allegations that cannot prevent summary judgment. Krippelz, 667 F.3d at 1269.

### iii. Claims 10 and 11[12]

| '380 Patent Claim 10 | De Vries |
|---|---|
| "The system of claim 1, wherein the user satellite communication system[13] includes a transmitter, and wherein the input device is adapted to receive user data from a user and the user processor is adapted to format the data for transmission by the transmitter." | "[T]he boater [can] communicate with the land-based operations center or with friends or family via text messages," de Vries ¶ [0037], and the messages are sent "via satellite data transmission." Id. ¶ [0036]. See also Zancho Opening Report ¶ 147-48. |

| '380 Patent Claim 11 | De Vries |
|---|---|
| "The system of claim 10, wherein the monitor satellite communication system includes a receiver that is adapted to receive transmissions from the transmitter via the satellite network, and wherein the monitor processor is adapted to format the user data received by the receiver for presentation to the observer on the output device." | "[T]he boater [can] communicate with the land-based operations center or with friends or family via text messages," de Vries ¶ [0037], and the messages are sent "via satellite data transmission." Id. ¶ [0036]. See also Zancho Opening Report ¶ 147-48. |

BriarTek argues that "de Vries is using pre-programmed messages which would not disclose detailed text messages and would not disclose the need to change the format of the data." BriarTek Opp'n at 25. Contrary to BriarTek's argument, claims 10 and 11 of the '380

---

[12] BriarTek groups claims 10 and 11 together in opposing the Motion for Summary Judgment. BriarTek Opp'n at 24-25. Accordingly, those claims will be addressed together.

[13] BriarTek's definition of this claim term indicates that a transmitter, receiver and antenna are "necessary" for mutual communication via a satellite network. Accordingly, a transmitter, receiver, and antenna are inherently present in any system that teaches mutual communication via a satellite network.

23

Patent do not require the processor to change the format of the data, but rather merely provide that the processor "format[s] the data for transmission." Because BriarTek argues regarding limitations which are not present in claims 10 or 11, BriarTek does not create a material dispute. King Pharms., 616 F.3d at 1275. Moreover, BriarTek does not present argument or evidence regarding the detailed text messages that de Vries also teaches, and which Mr. Zancho states require formatting for transmission. Zancho Opening Report ¶ 147. Finally, BriarTek does not set forth facts indicating that the "canned" messages would not need to be formatted, but instead simply asserts that they would not need to be formatted. BriarTek Opp'n at 25. For these reasons, BriarTek's assertions amount to a conclusory allegation through attorney argument that cannot prevent summary judgment. Krippelz, 667 F.3d at 1269.

iv. Claim 12

| '380 Patent Claim 12 | De Vries |
| --- | --- |
| "The system of claim 11, wherein the output device is adapted to display textual messages." | "[T]he boater [can] communicate with the land-based operations center or with friends or family via text messages," de Vries ¶ [0037], and the messages are sent "via satellite data transmission." Id. ¶ [0036]. See also Zancho Opening Report ¶ 147-48. |

BriarTek does not specifically dispute that de Vries anticipates claim 12. See BriarTek Opp'n at 23-25.

v. Claim 17

| '380 Patent Claim 17 | De Vries |
| --- | --- |
| "The system of claim 1, wherein the user unit further includes a status sensor that is communicatively coupled to the user processor and that provides status output, wherein the user processor is adapted to format the status output for communication from the user unit to the monitoring system via the satellite network." | "When the water level sensor detects . . . a water level in the bilge area where it should not be, indicating that the boat is taking on water, [the sensor] may send a signal to the operator module, which may then . . . send a signal to the land-based system." De Vries ¶ [0037]. See also Zancho Opening Report ¶ 150. |

BriarTek argues that the sensor in de Vries is not coupled to the user processor and that the processor does not format the data for communication; however, BriarTek does not set forth facts regarding why that would be the case, or how de Vries' system would operate without a processor or data formatting. See BriarTek Opp'n at 25. Thus, BriarTek's arguments amount to a conclusory allegation that cannot prevent summary judgment. Krippelz, 667 F.3d at 1269.

### vi. Claim 34

| '380 Patent Claim 34 | De Vries |
|---|---|
| "The system of claim 1, wherein the satellite network provide[s] substantially global coverage" | The system uses "Global Positioning Systems (GPS) [which] are worldwide satellite based navigation systems." See also Zancho Opening Report ¶ 151. |

BriarTek argues that de Vries only expressly addresses use by boats, that de Vries does not describe coverage of land masses, and therefore de Vries "teach[es] against coverage on land masses." BriarTek Opp'n at 25. This argument fails for numerous reasons. First, "[t]eaching away is irrelevant to anticipation." Seachange Int'l., Inc. v. C-COR, Inc., 413 F.3d 1361, 1380 (Fed. Cir. 2005). Second, claim 34 uses the term "substantially global coverage," with no specific mention of land masses. The Court takes judicial notice that the globe is substantially covered by water.[14] Therefore, a reasonable reading of de Vries would be that the invention provides for "substantially global coverage" and BriarTek does not create a material dispute regarding that term.

---

[14] See, e.g., http://www.noaa.gov/ocean.html ("The ocean covers 71 percent of the Earth's surface.").

| '380 Patent Claim 35 | De Vries |
|---|---|
| "A method of providing a travel service, comprising providing the user unit of claim 1 to a user, and monitoring the monitoring system of claim 1." | "The data may include trip planning information such as the coordinates of waypoints, or the data may indicate the coordinates of a geofence." De Vries ¶ [0010]. <u>See also</u> Zancho Opening Report ¶ 152. |

BriarTek does not specifically dispute that de Vries anticipates claim 35. <u>See</u> BriarTek Opp'n at 25; Steffes Dec. ¶ 71-72 (addressing claim 34, and then moving to the next reference).

For the foregoing reasons, claims 1, 5-12, 17, 34, and 35 of the '380 Patent are invalid as anticipated by de Vries.

### viii. Claim 2

DeLorme argues that de Vries teaches the '380 Patent's claim 2, that "the user unit is adapted to be coupled to a user," because de Vries teaches at [0039] that "the operator module could be a computer such as a laptop computer, or a handheld device such as a PDA." As PDAs "commonly include belt clips, lanyards, carabineers, or other fasteners that can connect the unit to the user," DeLorme Br. Att. 19 ("Zancho Dec.") ¶ 26, DeLorme argues that de Vries inherently teaches that the user unit may be "adapted to" or "configured to" be coupled to the user. DeLorme Br. at 16-17. Although BriarTek does not respond to DeLorme's argument that de Vries' teaching of a PDA satisfies the "coupling" element, <u>see</u> BriarTek Opp'n at 23, "anticipation by inherent disclosure is appropriate only when the reference discloses prior art that must <u>necessarily</u> include the unstated limitation." <u>Transclean Corp.</u>, 290 F.3d at 1373. Although DeLorme makes a strong case that de Vries teaches coupling, there is insufficient evidence to establish that it is necessary that the described PDAs include fasteners that could connect them to the user. Giving BriarTek the benefit of the doubt, BriarTek has raised a material factual dispute

26

regarding whether de Vries teaches claim 2. Accordingly, DeLorme has not presented sufficient evidence to conclude that claim 2 is invalid as a matter of law as anticipated by de Vries.

### 2. ORBCOMM

Titled "ORBCOMM PCS Available Now!" and written by Todd Hara of Orbital Communications Corporation, ORBCOMM was published in Volume 2 of the 1995 IEEE Military Communications Conference Record. ORBCOMM describes a system which "can provide the United States Armed Forces with two-way on-the-move data messaging anywhere in the world" using "light-weight and pocket-sized" subscriber communicators which send messages via satellite. § 1.0. Figure 1 illustrates the system as used to facilitate military operations:



Figure 1. The ORBCOMM System Supports US Armed Forces Mission Applications

Figure 3-2 illustrates the technical implementation:



Figure 3-2. ORBCOMM System Components

One embodiment of the ORBCOMM system allows for more effective search and rescue

operations. § 2.1.2. "The ORBCOMM system can effectively and inexpensively provide world-

wide continuous Combat Search and Rescue . . . The downed pilot can summon SAR [Search

and Rescue] teams with a light weight . . . [subscriber communicator]. The pilot will be

automatically notified when his SAR message is received by the SAR team." Id.

As a matter of law and as shown in the table under each subheading, ORBCOMM

anticipates claims 1, 2, 17, 34, and 35 of the '380 Patent.

i. Claim 1

| '380 Patent Claim 1 | ORBCOMM |
| --- | --- |
| "An emergency monitoring and reporting system" | "US Armed forced can use the ORBCOMM system for . . . search and rescue," ORBCOMM § 1.0, and "[t]he ORBCOMM system can effectively and inexpensively provide world-wide continuous Combat Search and Rescue." Id. § 2.1.2. See also Zancho Opening Report ¶ 156. |
| "comprising: a user unit" | "Thousands of messages have been sent to and from the satellites using Subscriber |

28

| | |
|---|---|
| | Communicators (SCs) (user terminals) to other SCs, Internet mail, fax machines, and pagers." ORBCOMM § 1.0. <u>See also</u> <u>id.</u> Fig. 3-2; Zancho Opening Report ¶ 157. |
| "comprising . . . a monitoring system" | "[G]round segment," "network control center," and "satellite control center" allow monitoring of the SCs. ORBCOMM §§ 3.1.2 – 3.1.2.4. <u>See also</u> <u>id.</u> § 1.0; Zancho Opening Report ¶ 161. |
| "wherein the user unit includes an input device" | "The SCs are compact, light-weight devices with . . . [a] keypad." ORBCOMM §3.1.4; Zancho Opening Report ¶ 158. |
| "wherein the user unit includes . . . a user satellite communication system" | "The SCs are compact, light-weight devices with . . . 5-watt transmitters." ORBCOMM §§ 3.0, 3.1.1.1, and 3.1.4. <u>See also</u> Zancho Opening Report ¶ 158. |
| "wherein the user unit includes . . . a user processor communicatively coupled to the user device and the user satellite communication system" | ORBCOMM § 3.1.4 (describing operation of the SC). <u>See also</u> Zancho Opening Report ¶ 159. |
| "wherein the monitoring system includes a monitoring satellite communication system" | "The GES transmits to the satellite . . . [and] receives . . . transmissions from the satellite." ORBCOMM §§ 3.0.2, 3.1.1.1, and 3.1.2.4. <u>See also</u> Zancho Opening Report ¶ 159. |
| "wherein the monitoring system includes . . . an output device" | ORBCOMM § 3.1.2.2 and Fig. 3-2 (showing monitor at NCC). <u>See also</u> Zancho Opening Report ¶¶ 160-61. |
| "wherein the monitoring system includes . . . a monitoring processor communicatively coupled to the monitoring satellite communication system and the output device" | "The NCC is comprised of highly available dual processor computers." ORBCOMM §§ 3.1.2 – 3.1.2.4 and Fig. 3-2. <u>See also</u> Zancho Opening Report ¶ 161. |
| "wherein the user satellite communication system and the monitoring satellite communication system are adapted for mutual communication via a satellite network" | "Thousands of messages have been sent to and from the satellites using Subscriber Communicators (SCs) (user terminals) to other SCs, Internet mail, fax machines, and pagers," ORBCOMM § 1.0, the ORBCOMM System can be used for "two-way messaging," <u>id.</u> § 1.1, and "[t]he ORBCOMM System uses a constellation of 36 satellites." <u>Id.</u> § 3.1.1.1. <u>See also</u> Zancho Opening Report ¶¶ 159, 161. |
| "such that the output device can present information to an observer, wherein the information corresponds to information entered at the input device" | The ORBCOMM System can be used for "two-way messaging," ORBCOMM § 1.1, and "[t]he ORBCOMM System user can compose, transmit, and receive messages." <u>Id.</u> § 3.0, Fig. 3-2. <u>See also</u> Zancho Opening Report ¶ 161. |

| "and wherein the input device includes a text entry device adapted to receive textual data entered by a user." | The ORBCOMM System can be used for "two-way messaging." ORBCOMM § 1.1. <u>See also</u> Zancho Opening Report ¶ 161 |
| --- | --- |

BriarTek first argues that ORBCOMM does not anticipate claim 1 because ORBCOMM "had latencies of up to several hours per message" and thus "[w]hile ORBCOMM may allow for two-way communications, it does not allow for two-way conversation as required in the application." BriarTek Opp'n at 19. BriarTek appears to be referencing the requirement in claim 1 of the '380 Patent that "the user satellite communication system and the monitoring satellite communication system are adapted for mutual communication via a satellite network." Read literally, claim 1 does not require any particular latency or effectiveness, only "mutual communication," and BriarTek admits that ORBCOMM teaches "two-way communications. <u>Id.</u> Accordingly, BriarTek's argument is directed to an unclaimed limitation which cannot prevent summary judgment. <u>King Pharms.,</u> 616 F.3d at 1275.

BriarTek next argues that ORBCOMM does not anticipate claim 1 because it does not describe a system that was functioning when the article was published. BriarTek Opp'n at 18; Steffes Dec. ¶ 51. That argument fails because "anticipation does not require actual performance of suggestions in a disclosure. Rather, anticipation only requires that those suggestions be enabling to one of skill in the art." <u>Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.,</u> 246 F.3d 1368, 1379 (Fed. Cir. 2001). Even if the system described by ORBCOMM did not exist when the article was published, and even if the system never existed at all, that does not prevent a finding of anticipation. <u>Id.</u> ORBCOMM is valid prior art for all that it enables, regardless of whether or not the system was functional at the time of publication.

BriarTek also argues that ORBCOMM does not teach the '380 Patent's monitoring system because ORBCOMM's Network Control Center ("NCC", <u>see</u> ORBCOMM Fig. 3-2 and §

3.1.2.2) only monitors and routes traffic, but does not contain an output device. BriarTek Opp'n at 20; Steffes Dec. ¶¶ 53-54. That argument is flatly contradicted by ORBCOMM Fig. 3-2, which shows a computer including a display as part of the NCC. Although BriarTek argues that Mr. Zancho admitted that the NCC is not a monitoring system by itself, BriarTek quotes Mr. Zancho out of context. In his deposition, Mr. Zancho stated that one way to see messages in the ORBCOMM reference does involve an output device, and he makes clear that "[t]here's two ways to see the message [through the NCC]. One is by an outside observer attaching himself to that or the operator of the network control center can see those messages on that screen." BriarTek Opp'n Ex. G ("Zancho Dep.") p. 80 lines 7-11. BriarTek cannot manufacture a material dispute by "submitting an expert declaration that something is black when the moving party's expert says it is white; there must be some foundation or basis for the opinion." <u>Invitrogen Corp.</u>, 429 F.3d at 1080. Therefore, BriarTek has not adequately contested the conclusion that the NCC allows for the reading of incoming messages on the screen at the NCC. <u>See</u> BriarTek Opp'n at 20; Steffes Dec. ¶¶ 53-54. Accordingly, BriarTek does not create a material dispute regarding whether ORBCOMM invalidates claim 1.

ii.  Claim 2

| '380 Patent Claim 2 | ORBCOMM |
|---|---|
| "The system of claim 1, wherein the user unit is adapted to be coupled to a user." | "The SCs are light-weight and pocket-sized." ORBCOMM § 1.0. <u>See also</u> . Zancho Opening Report ¶ 162. |

ORBCOMM teaches that the Subscriber Communicators (SCs) are pocket-sized, § 1.0, which leads to the conclusion that the SCs may be tethered or coupled to the user by placing the SC in the user's pocket. BriarTek questions whether a downed pilot could necessarily carry the SC, BriarTek Opp'n at 21, but does not contest that an SC may be tethered or coupled to the user

31

by being placed in the user's pocket. Thus, BriarTek has not raised a material dispute regarding whether ORBCOMM invalidates claim 2.

iii. Claim 17[15]

| '380 Patent Claim 17 | ORBCOMM |
| --- | --- |
| "The system of claim 1, wherein the user unit further includes a status sensor that is communicatively coupled to the user processor and that provides a status output, wherein the user processor is adapted to format the status output for communication from the user unit to the monitoring system via the satellite network." | "[T]he ORBCOMM System can . . . [provide] remote sensor control, transmission of data from intrusion, motion heat sensors." ORBCOMM ¶ 2.0. See also Zancho Opening Report ¶ 171 (formatting is necessary to communicate sensor signals). |

BriarTek repeats its arguments about ORBCOMM lacking a monitoring system,[16] but does not contest that sensor signals must be formatted before they can be transmitted, nor that ORBCOMM teaches a status sensor that is coupled to the user processor and that transmits information. See BriarTek Opp'n at 22. Therefore, BriarTek has not raised a material dispute regarding the invalidity of claim 17.

iv. Claim 34

| '380 Patent Claim 34 | ORBCOMM |
| --- | --- |
| "The system of claim 1, wherein the satellite network provide[s] substantially global coverage." | The ORBCOMM System "can provide the United States Armed Forces with two-way on-the-move data messaging anywhere in the world." ORBCOMM § 1.0. See also Zancho Opening Report ¶ 172. |

BriarTek argues that the article states that only one satellite had been launched at the time of publication. See BriarTek Opp'n at 22. As discussed above, "anticipation does not require actual performance of suggestions in a disclosure. Rather, anticipation only requires that those

---

[15] DeLorme does not argue that ORBCOMM anticipates claims 5-9 of the '380 Patent.
[16] Those arguments, for the reasons explained above regarding claim 1, are unconvincing.
32

suggestions be enabling to one of skill in the art." Bristol-Myers Squibb, 246 F.3d at 1379. The

question is not what actually existed at the time that ORBCOMM was published, but rather what

ORBCOMM suggested to one of ordinary skill in the art. ORBCOMM specifically states that its

system operates "anywhere in the world." § 3.0; Zancho Opening Report ¶ 172. BriarTek does

not dispute that ORBCOMM teaches a system that operates anywhere in the world. Therefore,

BriarTek has not raised a material dispute regarding claim 34, which is anticipated by

ORBCOMM.

v. Claim 35

| '380 Patent Claim 35 | ORBCOMM |
|---|---|
| "A method of providing a travel service, comprising providing the user unit of claim 1 to a user, and monitoring the monitoring system of claim 1." | The ORBCOMM system allows users to "[c]ommunicate on-the-move" from the SCs, and can "[t]rack the position of logistics throughout shipment." ORBCOMM § 2.0. See also Zancho Opening Report ¶ 173. |

BriarTek does not specifically dispute that ORBCOMM teaches the limitations of claim

35, instead relying on its arguments regarding claim 1. BriarTek Opp'n at 22. For the same

reasons that BriarTek's arguments are unconvincing regarding claim 1, they are unconvincing

regarding claim 35.

vi. Claims 10-12

DeLorme argues that ORBCOMM anticipates claims 10-12. See DeLorme Br. at 14-15.

Claim 10 depends on claim 1. Claim 11 depends on claim 10, and claim 12 depends on claim 11.

Because dependent claims incorporate the limitations of the claim (or claims) on which they

depend, claim 10 must be invalid in order for claims 11 and 12 to be invalid.

Claim 10 provides that "the user satellite communication system includes a transmitter,

and wherein the input device is adapted to receive user data from a user and the user processor is

33

adapted to format the data for transmission by the transmitter." DeLorme argues that "[t]he SCs include five-watt transmitters." DeLorme Br. at 14; Zancho Opening Report ¶ 168. DeLorme does not argue that ORBCOMM teaches the formatting limitation, or that the formatting limitation is inherent. See DeLorme Br. at 14; Zancho Opening Report ¶ 168. Therefore, DeLorme does not argue that ORBCOMM teaches each and every limitation of claim 10. Neither does Mr. Zancho present specific facts regarding the formatting limitation. Id. Therefore, DeLorme does not present sufficient evidence to conclude that ORBCOMM anticipates claim 10 as a matter of law. Because summary judgment is not appropriate as to claim 10, neither is it appropriate as to claims 11 or 12.

### 3. Motorola Manual

DeLorme has presented insufficient evidence to conclude that the Motorola Manual anticipates, as a matter of law, claims 1, 2, 5-12, 17, 34, or 35 of the '380 Patent.

The Motorola Manual, titled "Satellite Series 9505 Portable Telephone User's Guide," Motorola Manual at 1, describes how the phone can be placed into "satellite mode," which allows communication via satellite. See id. at 46, 188. Using the phone in satellite mode allows "communication in many remote areas around the world." Id. at i.

DeLorme argues that the Motorola Manual teaches each element of claim 1 because a person of ordinary skill could have created the system of claim 1 by using one satellite phone as the user unit, and connecting another satellite phone to a computer to create a monitoring system. DeLorme Br. at 19; Zancho Opening Report ¶ 201. The Motorola Manual itself does not describe such a system, nor does DeLorme claim that it does. See DeLorme Br. at 19; Zancho Opening Report ¶ 201. Instead, DeLorme argues that "a second Motorola handset could satisfy all of the elements of the claimed monitoring system." DeLorme Br. at 19. That someone could arrange

34

two phones in a particular manner does not mean that the Motorola Manual teaches that arrangement; indeed, the Motorola Manual does not teach any arrangement involving two phones, other than general calling and texting. See Motorola Manual. Further, BriarTek presented evidence that a person of ordinary skill would not understand the Motorola Manual to teach a monitoring system. Steffes Rebuttal Report at 13.

This evidence establishes a genuine issue of material fact regarding whether the Motorola Manual anticipates claim 1 of the '380 Patent. Because claims 2, 5-12, 17, 34, and 35 depend, directly or indirectly, on claim 1, BriarTek has raised a genuine issue of material fact regarding whether the Motorola Manual anticipates those claims as well.

In summary, claims 1, 5-12, 17, 34, and 35 of the '380 Patent are invalid as anticipated by de Vries. Additionally, claims 1, 2, 17, 34, and 35 of the '380 Patent are invalid as anticipated by ORBCOMM; however, there is insufficient evidence to conclude that the Motorola reference anticipates any of the asserted claims of the '380 Patent.

**F. Obviousness**

Even where an invention has not been identically disclosed in one prior art reference, the patent claims may nevertheless be invalid where "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a).

Obviousness under 35 U.S.C. § 103 "is a question of law based on underlying findings of facts," namely (i) the scope and content of the prior art, (ii) the characteristics and understanding of an individual of ordinary skill in the art at the time of invention, (iii) the differences between the claimed invention and the prior art, and (iv) the evidence of secondary factors of non-

35

obviousness. See Graham v. John Deere Co., 383 U.S. 1, 17-18 (1966); Eisai Co. Ltd. v. Dr. Reddy's Labs., Ltd., 533 F.3d 1353, 1356 (Fed. Cir. 2008). "Where . . . the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors, summary judgment is appropriate." KSR, 550 U.S. at 427.

"[T]he legal determination of obviousness may include recourse to logic, judgment, and common sense, in lieu of expert testimony." Wyers v. Master Lock Co., 616 F.3d 1231, 1239 (Fed. Cir. 2010). The Court may determine that a claimed invention was obvious, even without expert testimony, if the invention was "easily understandable." Id. "[W]here all of the limitations of the patent were present in the prior art references, and the invention was addressed to a known problem, KSR compels the grant of summary judgment of obviousness." Id. (internal quotation marks omitted). Further, "it is well-established that a determination of obviousness based on teachings from multiple references does not require an actual, physical substitution of elements." In re Mouttet, 686 F.3d 1322, 1332 (Fed. Cir. 2012). Instead, "the test for obviousness is what the combined teachings of the references would have suggested to those having ordinary skill in the art." Id. To the extent that BriarTek has raised a genuine dispute of material fact regarding anticipation of any claim of the '380 Patent, BriarTek has not raised a genuine dispute of material fact regarding the obviousness of those claims.

### 1. Scope and Content of the Prior Art

Only references analogous to the claimed invention may be considered when evaluating obviousness. Wyers, 616 F.3d at 1237. To determine whether a reference is analogous, courts should consider "(1) whether the art is from the same field of endeavor, regardless of the problem addressed, and (2) if the reference is not within the field of the inventor's endeavor,

36

whether the reference is still reasonably pertinent to the particular problem with which the inventor is involved." Id. BriarTek does not contest that the references cited by DeLorme are analogous art. See BriarTek Opp'n at 27-28. Therefore, there is no dispute regarding the scope and content of the prior art.

### 2. Level of Ordinary Skill in the Art

For the purposes of this motion, the Court adopts BriarTek's definition of a person of ordinary skill in the art. To determine obviousness, the Court views a person of ordinary skill in the art as a person with a bachelor's degree in physics or engineering with approximately ten years of experience in the field of satellite communications, satellite navigations, or wireless interfaces, or a master's degree in physics or engineering and five years of relevant experience, or a Ph.D. and research in the same field. Steffes Opening Report at 20-21. Accordingly, there is no material dispute regarding the level of ordinary skill.

### 3. Secondary Considerations

"[S]econdary considerations such as commercial success, long felt but unsolved needs, failure of others, etc. . . . may have relevancy" to the obviousness determination. Graham, 383 U.S. at 17-18. The Court must consider such factors, when presented, in evaluating obviousness. In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litigation, 676 F.3d 1063, 1075 (Fed. Cir. 2012). In this case, neither DeLorme nor BriarTek offered evidence of secondary considerations for this Court to consider. See DeLorme Br.; BriarTek Opp'n. Accordingly, there is no material dispute regarding secondary considerations.

### 4. Differences Between Claimed Invention and Prior Art

Before making a determination of obviousness, the Court must resolve any differences between the claimed invention and the prior art. Graham, 383 U.S. at 17-18. As explained in the

anticipation section above, the Court has found that de Vries and ORBCOMM teach almost every asserted claim. For the purposes of evaluating obviousness, BriarTek's arguments that these references do not anticipate the asserted claims will be accepted, so that there is no dispute regarding the differences between the claimed invention and the prior art.

Regarding claim 1, BriarTek argues that de Vries does not teach "mutual communication using detailed text messages." BriarTek Opp'n at 23. Regarding claim 2, BriarTek argues that de Vries does not teach coupling or tethering. Id. Regarding claims 5-9, BriarTek repeats its arguments regarding the requirement for detailed text messages. Id. at 24. Regarding claims 10-11, BriarTek admits the "need" to change the format of data when using detailed text messages and argues that because de Vries does not teach detailed text messages, formatting is not present. Id. at 25. Regarding claim 17, BriarTek argues that de Vries does not teach that the sensor is coupled to the user processor to format the data for communication. Id. Regarding claim 34, BriarTek argues that de Vries does not teach global coverage. Id. BriarTek does not dispute that all other claim limitations are present in de Vries. See id. at 23-25.

Regarding claim 1, BriarTek argues that ORBCOMM does not contain a monitoring system. Id. at 19-20. Regarding claim 2, BriarTek argues that ORBCOMM does not teach coupling. Id. at 21. Regarding claim 34, BriarTek argues that ORBCOMM does not teach worldwide coverage. Id. at 22. BriarTek does not contest that all other claim limitations are present in ORBCOMM. See id. at 19-22.

Regarding claims 5 and 7, BriarTek argues that the Motorola Manual does not teach pre-stored text messages. Id. at 26.

## 5. Resolving Obviousness

For the purposes of resolving obviousness, it will be assumed that BriarTek is correct regarding the differences between the claimed invention and the prior art. This assumption renders the factual underpinnings of the obviousness inquiry without dispute. Accordingly, the legal determination of obviousness is ripe for summary judgment adjudication.

### i. De Vries in view of the Motorola Manual

Regarding claims 1 and 5-9, BriarTek argues that de Vries does not teach detailed text messaging. Id. at 23-24. DeLorme argues and BriarTek concedes that the Motorola Manual does teach detailed text messaging. DeLorme Br. at 18-19; Zancho Opening Report ¶ 201; BriarTek Opp'n at 25-27. It would have been obvious to one of ordinary skill in the art to combine de Vries and the Motorola Manual to arrive at the invention of claims 1 and 5-9. It would have been clear to even a layperson that sending customized detailed messages would be preferable to sending "canned" messages because customized messages allow for more robust communication. Further, de Vries specifically teaches that its user unit could be a device similar to the satellite phone described by the Motorola Manual. See de Vries [0039] ("The operator module could be . . . a handheld device such as a PDA."). Accordingly, De Vries specifically suggests use of a device like the Motorola satellite phone, which BriarTek does not contest provides detailed messaging capability. Therefore, it would have been obvious to one of ordinary skill in the art to combine the teachings of de Vries and the Motorola Manual to reach the invention in claim 1.

Regarding claim 2, BriarTek argues that de Vries does not teach coupling to a user. BriarTek Opp'n at 23. As discussed above, there is a strong case for concluding that de Vries does teach coupling; however, there can be no reasonable dispute that the Motorola Manual does

teach coupling, and BriarTek does not contest this teaching. DeLorme Br. at 19; Zancho Opening Report ¶ 209; BriarTek Opp'n at 25-27. Indeed, the Motorola Manual specifically discloses a carry case and wrist strap. Motorola Manual at 22-23. BriarTek also does not contest that de Vries teaches that its user unit may be a handheld device, and that handheld devices often come with methods to attach the device to the user. See BriarTek Opp'n. Therefore, it would have been obvious to combine the teachings in these two references to arrive at the invention in claim 2. A person of ordinary skill in the art would have recognized that allowing for coupling with the user would make the user unit more portable, and thus easier to use. This would have rendered the claimed invention obvious to one of ordinary skill in the art.

Regarding claims 10 and 11, BriarTek argues that formatting is not present in de Vries because de Vries does not teach detailed text messages. BriarTek also argues that when sending detailed text messages a device "need[s] to change the format of the data." BriarTek Opp'n at 25. As discussed above, the Motorola Manual teaches detailed text messages and BriarTek admits that formatting is necessary for sending detailed text messages. Therefore, the combination of de Vries and the Motorola Manual teaches all of the limitations in claims 10 and 11, even under BriarTek's reading of the prior art. Therefore, these claims would have been obvious to one skilled in the art.

Regarding claim 34, BriarTek argues that de Vries does not teach substantially global coverage. BriarTek Opp'n at 25. DeLorme argues, and BriarTek does not contest, that the Motorola Manual does teach substantially global coverage. DeLorme Br. at 20; Zancho Opening Report ¶ 218; BriarTek Opp'n at 25-27. Thus, the combination of the two references teaches each element of claim 34. It would have been obvious to one of ordinary skill in the art to combine these teachings to arrive at the invention as claimed. Specifically, one of ordinary skill

40

in the art would have recognized the advantage of having more coverage in a communication system, and would have recognized that substantial coverage would increase the number of people with whom a user could communicate.

### ii. ORBCOMM in view of de Vries

DeLorme also argues that ORBCOMM and de Vries render the '380 Patent obvious. Regarding claim 1, BriarTek argues that ORBCOMM does not teach a monitoring system, BriarTek Opp'n at 19-20; however, BriarTek does not contest that de Vries teaches a monitoring system. See BriarTek Opp'n at 23-25. Thus, the combination of ORBCOMM with de Vries teaches each element of claim 1. The advantages of a central system to monitor, for example, the search and rescue operations taught by ORBCOMM would have been obvious to one of ordinary skill. A central system allows for easier coordination of rescue operations – a stated goal of ORBCOMM,[17] and would have rendered the invention of claim 1 obvious to one of ordinary skill in the art.

### iii. De Vries in view of the Motorola Manual in view of ORBCOMM

Regarding claim 17, BriarTek argues that de Vries does not teach that the sensor is coupled to the user processor to format the data for communication. BriarTek Opp'n at 25. DeLorme argues that ORBCOMM does teach this limitation, and BriarTek does not dispute that ORBCOMM teaches a sensor which transmits information. DeLorme's Reply Brief [Dkt. No. 140] ("Reply Br.") at 140; BriarTek Opp'n at 22. BriarTek also does not dispute that de Vries teaches a monitoring system which receives information from a sensor, see BriarTek Opp'n at 25, and that sensor signals must be formatted before they are transmitted. See id. at 22. It would have been obvious to one of ordinary skill in the art to combine the de Vries, ORBCOMM, and

---

[17] ORBCOMM § 2.1.2 ("The ORBCOMM System can effectively and inexpensively provide world-wide [Combat Search and Rescue] coverage using the ORBCOMM satellite constellation.").

Motorola Manual teachings to arrive at the invention in claim 17. One of ordinary skill would have recognized the advantage of a central system to monitor, for example, the sensor systems taught by ORBCOMM. § 2.0. BriarTek does not contest that transmitting sensor information requires formatting. See BriarTek Opp'n at 22. Thus, the combined references rendered the invention in claim 17 obvious to one of ordinary skill in the art.

    iv.  <u>ORBCOMM in view of de Vries in view of the Motorola Manual</u>

Regarding claim 2, BriarTek argues that ORBCOMM does not teach coupling to a user, BriarTek Opp'n at 23, but does not contest DeLorme's argument that the Motorola Manual does teach coupling. DeLorme Br. at 19; Zancho Opening Report ¶ 209; BriarTek Opp'n at 25-27. Indeed, the Motorola Manual specifically teaches a carry case and wrist strap, Motorola Manual at 22-23, ORBCOMM teaches that the Subscriber Communicators (SCs) are pocket-sized, § 1.0, and De Vries teaches that the user unit can be a PDA. ¶ [0039]. BriarTek does not contest either that ORBCOMM teaches that its user unit may be a handheld device, or that handheld devices often come with methods for attaching the device to the user. See BriarTek Opp'n. It would have been obvious to combine these teachings to arrive at the invention in claim 2. A person of ordinary skill in the art would have recognized that allowing for coupling with the user would make the user unit more portable, and thus easier to use. This would have rendered the claimed invention obvious to one of ordinary skill in the art.

    v.  <u>BriarTek's Obviousness Arguments</u>

BriarTek presents two general arguments to oppose a finding that any of the claims are obvious; however, each fails as a matter of law. First, BriarTek argues that "[o]bviousness cannot be established by merely finding identical parts in the prior art." BriarTek Opp'n at 27. As authority, BriarTek cites <u>Applied Med. Res. Corp. v. U.S. Surgical Corp.</u>, 147 F.3d 1374,

1380 (Fed. Cir. 1998). That argument fails because the section of <u>Applied Med. Res. Corp.</u> that BriarTek cites addresses anticipation, not obviousness. <u>Id.</u> at 1380. Even so, BriarTek states a truism. Finding identical parts in the prior art is neither necessary nor sufficient under <u>Graham</u> and <u>KSR</u>; rather, the Court must resolve the factual underpinnings, and then determine obviousness in light of those facts. <u>See</u> <u>KSR</u>, 550 U.S. at 406-07; <u>Graham</u>, 383 U.S. at 17-18.

Second, BriarTek argues that mixing of the systems described in DeLorme's cited references would not be possible, because "each . . . system[] i[s] limited by its technical implementation" and therefore the systems are "not generically interchangeable." BriarTek Opp'n at 28. But "it is well-established that a determination of obviousness based on teachings from multiple references does not require an actual, physical substitution of elements." <u>Mouttet</u>, 686 F.3d at 1332. Instead, "the test for obviousness is what the combined teachings of the references would have suggested to those having ordinary skill in the art." <u>Id.</u> The Court is satisfied that, for the reasons above, the combined teachings of the references, combined with the knowledge of one of ordinary skill in the art, would have suggested the claimed invention. Thus, the claims are obvious as a matter of law.[18]

### G. <u>Written Description, Indefiniteness, and Subject Matter</u>

Because all the asserted claims have been found to be invalid as a matter of law over the prior art, either as anticipated or as obvious, the arguments regarding written description, indefiniteness, and subject matter eligibility need not, and will not, be addressed.

---

[18] The parties also present numerous arguments regarding Boling. Because the other cited prior art is sufficient, the Court does not need to refer to Boling to resolve either the anticipation or obviousness analysis. When considered with the other references, however, Boling overwhelmingly confirms the conclusion of invalidity.

### III.   CONCLUSION

For the reasons stated above, plaintiffs' Motion for Summary Judgment [Dkt. No. 109] will be granted by an appropriate Order to be issued with this Memorandum Opinion.

Entered this 19th day of November, 2014.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge